**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RAVE INC.,**<br>Plaintiff,<br>**v.**<br>**APPLE INC.,**<br>Defendant. | No. 2:26-cv-05128-WJM-AME<br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court is Defendant Apple Inc.'s ("Defendant" or "Apple") Motion to Transfer Venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a). ECF No. 15 ("Motion"). This Court declines to hold oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Rave Inc. ("Plaintiff" or "Rave"), a Canadian corporation, operates a cross-platform, co-viewing application ("Rave App") that enables users to stream content together in real time across devices. ECF No. 1 ("Complaint" or "Compl."), at ¶¶ 14-15. Plaintiff published the Rave App on Defendant's App Store ("App Store") in January 2015. *Id.* ¶ 45. Defendant requires developers who wish to develop or distribute applications ("apps") through its App Store to agree to its Apple Developer Program License Agreement ("DPLA"), which contains a forum-selection clause in Section 14.10, providing:

> Any litigation or other dispute resolution between You and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California, and You and Apple hereby consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District with respect any such litigation or dispute resolution.

ECF No. 15-4 ("Motion to Transfer, Ex. 2"), at 11, 66. Plaintiff executed the DPLA on June 16, 2014 and accepted updated versions until December 17, 2025. *Id.* at 9.

Plaintiff alleges that Defendant sought to copy the Rave App's co-viewing features by creating "SharePlay" in 2021. Compl. ¶ 82. SharePlay is a feature that enables "synchronized media viewing" exclusively across Apple devices. *Id.* ¶¶ 82-84. Additionally, among other anticompetitive acts, Plaintiff alleges that Defendant "manipulated App Store controls" to suppress the Rave App's growth, removed the Rave

App from the App Store on August 13, 2025, and terminated Plaintiff's developer account with Defendant on December 19, 2025. *Id.* ¶¶ 1, 92, 95, 107.

Plaintiff filed suit in this District, bringing claims against Defendant for violations of 15 U.S.C. § 2 ("Section 2 of the Sherman Act") (Claims I-VI), tortious interference with prospective economic advantage (Claim VII), unfair competition (Claim VIII), and violation of the New Jersey Antitrust Act (Claim IX). Compl. ¶¶ 193-266. On June 29, 2026, Defendant moved to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"), arguing that the forum-selection clause in the DPLA governs here and transfer is warranted under Section 1404(a).

## II. LEGAL STANDARD

Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). A court may transfer a civil action to any other district where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). A valid forum-selection clause "may be enforced through a motion to transfer under [Section] 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). A valid forum-selection clause modifies the Section 1404(a) analysis in three ways. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 63). "First, no weight is given to the plaintiff's choice of forum." *Id.* Second, the court only considers public-interest factors and "does not consider arguments about the parties' private interests." *Id.* Third, if a case is ultimately transferred due to a forum-selection clause, a Section 1404(a) "transfer of venue will not carry with it the original venue's choice-of-law rules." *McGraw-Hill*, 909 F.3d at 57 (citing *Atl. Marine*, 571 U.S. at 64). Because the public-interest factors will "rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

## III. DISCUSSION

### A. Forum-Selection Clause

#### 1. *Enforceability of the Forum-Selection Clause*

A forum-selection clause is valid and enforceable "in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). A court considers "whether compelling compliance with the clause is unreasonable under the circumstances." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)) (citation modified). For a forum-selection clause to be deemed unreasonable, the party resisting enforcement must make a "strong showing" that the clause was "procured through 'fraud or overreaching'" or that the selected forum is "so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of his day in court." *Inamdar v. Massage Luxe Int'l, LLC*, No. 25-cv-6045, 2026 WL 1469609, at *4 (D.N.J. May 26, 2026) (quoting *Foster*, 933 F.2d at 1219). A party can also show

that enforcement of the clause would "contravene a strong public policy of the forum state." *Inamdar*, 2026 WL 1469609, at *4 (quoting *Collins*, 874 F.3d at 181) (citation modified). "Federal law controls the question of whether to enforce a forum selection clause." *McGraw-Hill*, 909 F.3d at 58.

Here, Plaintiff argues that the forum-selection clause contravenes public policy because the "DPLA is a non-negotiable condition of reaching iOS users" and "[e]nforcing the clause permits a monopolist to deploy one instrument of its monopoly power (compulsory acceptance of its terms)." Opp'n, at 34. However, forum-selection clauses are "routinely upheld" despite "unequal bargaining power" or the "absence of negotiations over the clause." *Heartland Payment Sys., Inc. v. Steves*, 15-cv-3544, 2015 WL 7737344, at *3 (D.N.J. Dec. 1, 2015). Additionally, Plaintiff's argument that the forum-selection clause was imposed through Defendant's monopoly power is not adequate grounds for invalidity because "the mere appearance of an antitrust dispute does not alone warrant invalidation of the selected forum on the undemonstrated assumption that [a] . . . clause is tainted." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 632 (1985). Finally, public policy in New Jersey favors enforcing contractual provisions, including forum-selection clauses. *Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, No. 22-cv-6369, 2023 WL 4764813, at *3 (D.N.J. July 26, 2023). Thus, the forum-selection clause is enforceable because Plaintiff has not demonstrated that the clause is unreasonable.

2. *Scope of the Forum-Selection Clause*

The question of whether a forum-selection clause is enforceable is distinct from the question of "whether the claims and parties involved in the suit are subject" to a forum-selection clause ("scope"). *See Collins*, 874 F.3d at 181 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). A court applies "principles of [state] contract law to determine the scope of the clause." *Collins*, 874 F.3d at 180, 182-83. The parties agree that California law should be used to assess the scope of the DPLA's forum-selection clause. Under California law, the language "arising out of or relating to" is given a broad connotation, meaning "the dispute between the parties need only touch matters covered by the contract containing the forum-selection clause" to fall within the clause's scope. *Webseed, Inc. v. Dep't of State*, No. 1:24-CV-00576, 2025 WL 996458, at *5 (W.D. Tex. Feb. 24, 2025) (citing *Ramos v. Superior Ct.*, 239 Cal. Rptr. 3d 679, 689 (Cal. Ct. App. 2018)) (citation modified); *see Rice v. Downs*, 203 Cal. Rptr. 3d 555, 563-64 (Cal. Ct. App. 2016).

Here, Plaintiff argues that its claims "can all be resolved without reference to or interpretation of the DPLA's terms." ECF No. 17 ("Opposition" or "Opp'n"), at 19. However, whether the DPLA is referenced in Plaintiff's Complaint is not dispositive; this litigation plainly relates to the DPLA because both parties agree that Plaintiff's developer account had been flagged for removal due to alleged "dishonest or fraudulent activity," which is a stated cause for termination under the DPLA. Compl. ¶ 95; Motion to Transfer, Ex. 2, at 61. Therefore, Plaintiff's claims of anticompetitive conduct "touch matters" covered by the DPLA, including the terms that governed the Rave App's distribution on

the App Store and ultimate removal from the App Store. *See Webseed*, 2025 WL 996458, at *5; Compl. ¶¶ 190, 197, 231. Moreover, Defendant's argument that Plaintiff's claims are related to Plaintiff's relationship with Defendant, even if the relationship is limited to the context of the developer program, is reasonable in light of the clause's broad language. *See Coronavirus Rep. v. Apple, Inc.*, 560 F. Supp. 3d 632, 640 (D.N.H. 2021) (determining that plaintiff's claims plainly arose out of or related to plaintiff's relationship with Apple despite plaintiff's argument that the case was "predominately an antitrust action"); *Coronavirus Rep. Corp. v. Apple Inc.*, No. 24-CV-0053, 2024 WL 5284023, at *1, *4 (D. Wyo. Nov. 21, 2024) (determining that an action asserting Apple's "monopolistic control and exclusionary practices" clearly arose from plaintiffs' relationship with Apple). Thus, Plaintiff's claims fall within the scope of the forum-selection clause. Overall, because the forum-selection clause is enforceable and Plaintiff's claims fall within the scope of the clause, the forum-selection clause applies in this case.[1]

**B. Transfer under Section 1404(a)**

Next, this Court will address if transfer to the Northern District of California is appropriate under Section 1404(a).[2] Because the forum-selection clause applies in this case, Plaintiff's "choice of forum merits no weight" and this Court will only consider the public-interest factors, which include (1) "the enforceability of the judgment," (2) "judicial economy" (3) "the relative administrative difficulty in the two fora resulting from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Atl. Marine*, 571 U.S. at 63-64; *Jumara*, 55 F.3d at 879-80; *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017). The public-interest factors "will overcome a forum-selection clause [under] only the most . . . 'extraordinary' circumstances." *Inamdar*, 2026 WL 1469609, at *6 (quoting *Collins*, 874 F.3d at 186).

Here, the public-interest factors weigh in favor of transfer. First, regarding enforceability of the judgment, Plaintiff argues that "[e]nforcement will be more uniform if this case remains in New Jersey because of the related proceedings pending under Judge Neals." Opp'n, at 41. However, on October 20, 2026, Plaintiff's request for reassignment of this case to Judge Neals was denied because the present matter was not "sufficiently related" to the Department of Justice ("DOJ") Action ("DOJ Action")[3] or the Multi-District Litigation ("MDL") Action ("MDL Action")[4] to warrant reassignment.[5] Reassignment

---

[1] The parties neither dispute the existence of the DPLA between the parties nor that the forum-selection clause is "mandatory" as Defendant insists. This Court agrees with Defendant that the clause is mandatory because the language "will take place" and "exclusive venue" clearly indicate that venue lies exclusively in the Northern District of California. *Coronavirus*, 560 F. Supp. 3d at 640; Motion, at 19-20.

[2] Both the transferor and transferee forums are proper under Section 1404(a).

[3] *United States v. Apple Inc.*, No. 2:24-cv-04055 (D.N.J.).

[4] *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 (D.N.J.).

[5] On October 22, 2026, Plaintiff filed a letter with this Court, reasserting that this case still

Order, at ¶ 7. Thus, the first factor is neutral because a judgment from this District or the Northern District of California "could easily be registered in another district." *See SI Power LLC v. Pathway Holdings Mgmt. V, LLC*, No. 15-cv-6101, 2016 WL 7130920, at *9 (D.N.J. Dec. 7, 2016). Second, the judicial economy factor weighs slightly in favor of this case remaining in this District because, even if this case is not sufficiently related to the DOJ Action or the MDL Action, some of issues and parties may loosely overlap. *Howmedica*, 867 F.3d at 402 (explaining that the judicial economy factor weighs against transfer of an action when a separate action involving similar factual or legal issues is pending in the originating district); Plaintiff's Letter, at 2. Third, the "court congestion" factor weighs in favor of transfer; Plaintiff concedes that this District has, at a minimum, double the pending civil actions of the Northern District of California.

Fourth, the "local interest" factor weighs in favor of transfer; while New Jersey's interests are not insubstantial, they do not outweigh California's substantial interest to adjudicate a case where most of the events occurred in California, including "App Store governance, developer account enforcement, and SharePlay development." *SI Power*, 2016 WL 7130920, at *10; Motion, at 28. Fifth, the "public policy" factor favors transfer because both New Jersey and California have policies in favor of parties' right to contract. *Unbeatablesale.com*, 2023 WL 4764813, at *3; *EpicentRx, Inc. v. Superior Ct.*, 572 P.3d 1, 10-11 (Cal. 2025). Sixth, the "state law familiarity" factor is neutral because this is not a diversity case. Because the forum-selection clause applies and the public-interest factors weigh in favor of transfer, "the convenience of parties and witnesses" and "the interest of justice" supports transfer to the Northern District of California. 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For these reasons, Defendant's Motion to Transfer Venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. An appropriate order follows.

**DATE:** 11/3/26

**WILLIAM J. MARTINI, U.S.D.J.**

substantially overlaps with other antitrust actions against Apple proceeding in this District. ECF No. 27 ("Plaintiff's Letter"), at 1. Plaintiff's main argument for why this case should remain in this District is that the DOJ and Apple have both recently subpoenaed Plaintiff for potential evidence regarding antitrust actions in this District. *Id.* However, as noted in Defendant's Letter dated October 27, 2026, Judge Salas's Reassignment Order determined that the present matter is *not sufficiently related* to these actions to warrant reassignment. ECF No. 26 ("Reassignment Order"), at ¶ 7; ECF No. 28 ("Defendant's Letter"), at 1. Additionally, Plaintiff does not offer an adequate explanation as to why being subpoenaed in *unrelated* actions should warrant the denial of a motion to transfer.